# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

|  |  |  |
|---|---|---|
| *In re*: | ) | Case No. 08-50805-FJS |
|  | ) |  |
| Mykal S. Ryan, | ) |  |
|  | ) |  |
| *Debtor.* | ) |  |
|  | ) |  |
| David R. Ruby, | ) | APN 10-05026-FJS |
| Chapter 7 Trustee, | ) |  |
|  | ) |  |
| *Plaintiff,* | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| Helen E. Ryan, | ) | Chapter 7 |
| John J. Ryan, Jr., | ) |  |
|  | ) |  |
| *Defendants.* | ) |  |
|  | ) |  |

## MEMORANDUM OPINION

This matter comes before the Court upon Plaintiff's Motion for Default Judgment. The Court has subject-matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This matter arises under Title 11 of the United States Code and is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (F), (H), (K) and (O). The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 7052. For the reasons set forth below, the Court finds that Defendants are in default and, therefore, the Court will enter a Default Judgment against Defendants, entitling Plaintiff to recovery under 11 U.S.C. § 550(a).

1

# I. PROCEDURAL BACKGROUND

On July 16, 2008 Mykal S. Ryan (the "Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Petition").[1] (Case No. 08-50805-FJS, Doc. No. 1.) Relief was ordered. David R. Ruby (the "Plaintiff") was appointed as Chapter 7 Trustee and continues to serve in that capacity.

Thereafter, on July 15, 2010, the Plaintiff initiated the above-captioned adversary proceeding by filing a complaint (the "Complaint") against the Debtor's parents, Helen E. Ryan ("Mrs. Ryan") and John J. Ryan, Jr. ("Mr. Ryan") (collectively the "Defendants"). (Doc. No. 1.) The Complaint seeks: (i) to avoid and recover fraudulent transfers, fraudulent conveyances and voluntary conveyances; (ii) to avoid and recover preferential transfers; (iii) to avoid and recover post-petition transfers; (iv) turnover of assets; and (v) a judgment of sums determined to be due the bankruptcy estate by the Defendants. (Compl. ¶¶ 42-74.)

On July 21, 2010, the Court issued a Summons and Notice in Adversary Proceeding (the "Summons"). (Doc. No. 3.) The Summons established an initial pre-trial conference date of September 28, 2010, and required the Defendants to file an answer or other responsive pleading no later than August 20, 2010. (Doc. No. 3.) The Plaintiff effectuated service of the Summons and Complaint upon the Defendants at their San Diego, California dwelling, via first-class mail, postage prepaid, on July 28, 2010. *See* Fed. R. Bankr. P. 7004(b)(1). (Doc. No. 4.) Thereafter, on August 18, 2010, Mrs. Ryan filed, *pro se*, a responsive pleading styled as "Motion to Request Dismissal of the Complaint" (the "First Motion to Dismiss"). (Doc. No. 5.) On August 25, 2010, the Clerk of Court issued to Mrs. Ryan a Confirmation of Request for Hearing, which established a September 28, 2010 hearing date on the First Motion to Dismiss and instructed

---

[1] Unless otherwise indicated, all further references to docket entries refer to the above-captioned adversary proceeding, APN 10-05026-FJS.

2

Mrs. Ryan to provide notice of the same. (Doc. No. 6.)

Thereafter, on September 27, 2010, Mrs. Ryan filed a document with the Court entitled

"Motion to Stay Adversary Proceeding" (the "Motion to Stay"). (Doc. No. 11.) The Motion to

Stay requested that the Court "stay the [above-captioned matter] for [n]inety (90) days and re-

evaluate at that time," due to an illness affecting Mr. Ryan. (Doc. No. 11.)

On September 28, 2010, the Court convened a pre-trial conference (the "Pre-trial

Conference") and a hearing on the First Motion to Dismiss. (Doc. No. 12.) The Defendants

failed to appear, although they were notified of the date, time, and location of the Pre-trial

Conference and of the hearing on the First Motion to Dismiss, and were afforded an opportunity

to attend the same via telephone. (Doc. No. 12.) At the Pre-trial Conference, the Court

established a trial date of May 11, 2011, a common discovery deadline of March 31, 2011, and a

bar date of April 20, 2011 for all dispositive motions, including motions for summary judgment;

the Court entered a pre-trial order memorializing the same on October 4, 2010. (Doc. No. 13.)

Additionally, the Court noted that although the Motion to Stay was filed one day prior, it was not

accompanied by a request for an expedited hearing. Therefore, the Court stated that the Motion

to Stay was not properly before the Court at that time, and that it would be set for a hearing in the

ordinary course.[2] Subsequently, on November 22, 2010, the Court administratively dismissed

the First Motion to Dismiss for failure to prosecute. (Doc. No. 27.) Neither Defendant filed,

thereafter, any other responsive pleading or motion pursuant to Federal Rule of Bankruptcy

Procedure 7012.

Following an approved substitution of counsel for the Chapter 7 Trustee, the Court

convened a continued pre-trial conference on March 22, 2011 (the "Continued Pre-trial

---

[2] The Clerk of Court subsequently issued a Confirmation of Request for Hearing on the Motion to Stay, which
established a hearing date of November 16, 2010, and advised Mrs. Ryan to provide notice of the same. (Doc. No.
20.)

Conference"). (Doc. Nos. 31, 48.) The Defendants were notified of the Continued Pre-trial
Conference but failed to attend, despite being afforded the opportunity to appear via telephone.
(Doc. No. 48.) Thereafter, the Court entered an amended pre-trial order on March 28, 2011 (the
"Amended Pre-trial Order"). (Doc. No. 51.) The Amended Pre-trial Order established a new
common discovery deadline date of June 30, 2011, and provided that "all motions, including
Motions for Summary Judgment . . . are to be filed on or before July 15, 2011." (Doc. No. 51.)
The Amended Pre-trial Order further provided that "[a]ll exhibits proposed by the Plaintiff and
the Defendant(s) are to be exchanged with the other parties and filed with the Court at least ten
(10) days prior to [the] trial" date of August 31, 2011. (Doc. No. 51.)

On July 5, 2011, Mrs. Ryan filed, *pro se*, a second motion with the Court, styled as
"Motion to Dismiss or Transfer Adversary Proceeding" (the "Second Motion to Dismiss").
(Doc. No. 67.) The Court issued a Confirmation of Request for Hearing on July 7, 2011, which
set a hearing date of July 26, 2011 on the Second Motion to Dismiss, instructed Mrs. Ryan to
provide notice of the same, and afforded Mrs. Ryan an opportunity to appear via telephone.
(Doc. No. 68.) Thereafter, on July 14, 2011, Mrs. Ryan filed with the Court a letter (the
"Letter") objecting to the July 26, 2011 hearing date on the Second Motion to Dismiss. (Doc.
No. 72.) The Court treated the Letter as a motion to continue the hearing on the Second Motion
to Dismiss (the "Motion to Continue") (Doc. No. 75.), and scheduled a hearing on the same for
August 16, 2011.[3] (Doc. No. 79.)

Subsequently, on July 13, 2011, the Plaintiff filed a Motion for Default Judgment
pursuant to Federal Rule of Bankruptcy Procedure 7055. (Doc. No. 70.) The Plaintiff served
notice of the Motion for Default Judgment on the Defendants via first-class mail, postage

_____

[3] Rule 9013-1(N) of the Local Bankruptcy Rules for the Eastern District of Virginia identifies the method by which
a party may request an expedited hearing. Bankr. E.D. Va. R. 9012-1(N). As the Motion to Continue did not
contain a request for an expedited hearing, the Court scheduled a hearing on the same in the ordinary course.

4

prepaid, on July 13, 2011. (Doc. No. 70.)

Thereafter, on July 26, 2011, the Court convened a hearing on the Second Motion to

Dismiss. (Doc. No. 73.) Mrs. Ryan failed to attend the July 26, 2011 hearing by telephone or

otherwise and failed to provide notice of the same. (Doc. No. 73.) Accordingly, the Court

dismissed the Second Motion to Dismiss for failure to prosecute. (Doc. No. 80.)

On August 16, 2011, the Court convened a hearing on the Motion to Continue. (Doc. No.

83.) Mrs. Ryan did not attend the hearing in person and did not avail herself of the opportunity

to appear by telephone. (Doc. No. 83.) Accordingly, the Court denied the Motion to Continue

for failure to prosecute. (Doc. No. 83.) At the August 16, 2011 hearing, the Court established an

October 4, 2011 hearing date for the Motion for Default Judgment (the "Default Motion

Hearing") and directed the Plaintiff to provide the Defendants a minimum of twenty-one (21)

days notice of the same. (Doc. No. 83.) Additionally, the Court continued the trial scheduled for

August 31, 2011, and instructed that the date set for the Default Motion Hearing would be used

as a scheduling conference if necessary.

On August 22, 2011, the Plaintiff served the Defendants with Notice of the Default

Motion Hearing, which authorized the Defendants to participate in the Default Motion Hearing

by telephone. (Doc. No. 85.) Thereafter, on September 6, 2011, the Plaintiff filed with the

Court—and served on Defendants via first-class mail, postage prepaid—an amended list of

witnesses, amended list of exhibits, and copies of exhibits intended to be introduced at the

Default Motion Hearing. (Doc. Nos. 88, 89.)

Subsequently, the Defendants filed several motions with the Court seeking to avert the

Default Motion Hearing.[4]  However, the Court convened the Default Motion Hearing, as

scheduled, on October 4, 2011. (Doc. No. 97.) The Defendants failed to attend the Default

Motion Hearing in person or by telephone. (Hr'g Tr. 3:13-23, October 4, 2011.) At the Default

Motion Hearing the Plaintiff presented evidence in the form of exhibits and testimony, which

were admitted without objection.

## II. FINDINGS OF FACT

Having reviewed the Complaint, the Court accepts the Plaintiff's well-pleaded factual

allegations as true and makes the following findings of fact. *See DIRECTV, Inc. v. Rawlins*, 523

F.3d 318, 322 n.1 (4th Cir. 2009) (accepting plaintiff's allegations against defaulting defendant

as true, noting a defaulting defendant "admits the plaintiff's well-pleaded allegations of fact, is

concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus

established") (quoting *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

### A. The Family Trust and Judgments Entered Against the Debtor

On March 29, 1999, the John and Christy Ryan Family Trust (the "Family Trust") was

created by a trust instrument. (Compl. ¶ 9.) The Family Trust was funded by the Estate of John

M. Ryan, following his death on March 19, 2005. (Compl. ¶ 9.) The sole beneficiary of the

Family trust was JER[5], the minor son of the late John M. Ryan. (Compl. ¶ 9.)

The Debtor is John M. Ryan's brother and JER's uncle. (Compl. ¶ 10.) The Debtor

---

[4] On September 14, 2011, the Debtor, on behalf of Mr. Ryan, filed a document entitled "Objection to Scheduled Hearing for Default Judgment Due to Hospitalization of Defendant" (Doc. No. 91.); on September 19, 2011, Mrs. Ryan, individually, and the Debtor, on behalf of Mr. Ryan, filed with the Court a motion styled as "Objection to Chapter 7 Trustee Withholding Evidence Critical to Adversary Proceeding" (Doc. No. 92.); and on September 21, 2011, the Defendants filed a motion entitled "Motion to Dismiss Adversary Proceeding Due to Chapter 7 Trustee Fabrication of Evidence and Defrauding the Defendants" (Doc. No. 93.) (collectively the "Motions"). By separate Orders of the same date as this Opinion, the Court denied the Motions for failure to comply with the time limits imposed by the Amended Pre-trial Order regarding the filing of dispositive motions and for failure to comply with Rule 9013-1(N) of the Local Bankruptcy Rules for the Eastern District of Virginia. (Doc. Nos. 124-126.)

[5] JER's full name redacted in accordance with Fed. R. Bankr. P. 9037.

served as the executor of the Estate of John M. Ryan, and successor trustee of the Family Trust.
(Compl. ¶ 11.) On September 22, 2006, Christy Babbitt-Ryan, the mother and guardian *ad litem*
of JER and ex-spouse of John M. Ryan, filed a petition (the "Removal Petition") with the
Superior Court of the State of California, Alameda County (the "California State Court").
(Compl. ¶ 12.) In the Removal Petition, Ms. Babbitt-Ryan sought removal of the Debtor as
trustee of the Family Trust on grounds that the Debtor committed various breaches of his
fiduciary duties and obligations, including numerous instances of self-dealing. (Compl. ¶ 12.)
The California State Court granted the Removal Petition on June 18, 2007. (Compl. ¶ 12.)

Thereafter, on August 13, 2007, the California State Court entered a judgment against the
Debtor in an initial amount of $92,256.34 (the "State Court Judgment"). (Compl. ¶ 12, Ex. A.)
However, the Debtor failed to account for, and report to the California State Court regarding,
assets of the Family Trust and, on April 7, 2008, the California State Court entered a
supplemental judgment against the Debtor in favor of the Family Trust in the amount of
$939,508.47. (Compl. ¶ 13, Ex. C.) Thereafter, on November 27, 2007, the Superior Court of
the State of Arizona entered a separate judgment against the Debtor in favor of the Family Trust
in the amount of $56,431.89. (Compl. ¶ 14, Ex. B.) Excluding interest, the total judgments
entered against the Defendant equals $1,088,196.70. (Compl. ¶ 15.)

### B. Subsequent Diversion, Transfer and Concealment of Assets

The Complaint alleges that the Defendants engaged in "an elaborate and protracted
scheme and course of conduct of diverting, transferring and concealing assets with the actual
intent to hinder, delay and/or defraud" certain creditors. (Compl. ¶ 17, 32.) The Complaint
further avers that the aforementioned scheme was carried out through the Debtor's assistance.
(Compl. ¶ 17.) Specifically, the Complaint alleges that the Debtor transferred assets to the
Defendants for little or no consideration or repaid debts to the Defendants. (Compl. ¶ 17.)

7

Notable among the Debtor's alleged transactions and efforts are: (i) withdrawals and debits from, and transferring and shifting between, his accounts of hundreds of thousands of dollars in funds, including numerous cash withdrawals (the "Debtor Account Withdrawals"); (ii) opening, and causing to be opened, bank and other accounts for himself in the name of the Defendants (the "Ryan Accounts"); (iii) depositing and transferring into the Ryan Accounts funds belonging to the Debtor, including, but not limited to, funds emanating from the Debtor Account Withdrawals; and (iv) transferring to the Defendants funds belonging to the Debtor for no, or effectively no, consideration. (Compl. ¶ 19.) The Complaint also alleges that the Debtor transferred to Mr. Ryan, Mrs. Ryan, and the Ryan Accounts various Debtor entitlements, including retirement, disability, and social security payments. (Compl. ¶ 20.) In relevant part, the Complaint alleges:

i.   The Debtor withdrew three hundred eighteen thousand dollars ($318,000.00) from his Wachovia Bank, N.A. ("Wachovia") account ending in 4710 during the period of August 28, 2007, through October 15, 2007 (Compl. ¶ 21.);

ii.  The Debtor Purchased seventy-one thousand dollars ($71,000.00) in United States Postal Service money orders during the period of September 13, 2007, through September 24, 2007 (Compl. ¶ 24.);

iii. The Debtor withdrew two hundred thousand ninety-six dollars and eleven cents ($200,096.11) from his Wells Fargo Bank, N.A. ("Wells Fargo") account ending in 9207 during the period of September 28, 2007, through December 15, 2007 (Compl. ¶ 25.);

iv.  The Debtor opened a Wachovia account, ending in 7168, in the name of Mrs. Ryan, on August 24, 2007, for which the Debtor had power of attorney (Compl. ¶ 27);

v.   The Debtor opened a Bank of America, N.A. ("Bank of America") account ending in 9305, in the names of Mr. Ryan and Mrs. Ryan on September 10, 2007, for which the

8

Debtor had power of attorney (Compl. ¶ 27);

vi.  The Debtor opened a Wells Fargo account ending in 7928, in the name of Mrs. Ryan, on

or about November 9, 2007, for which the Debtor had power of attorney (Compl. ¶ 27);

vii. The Debtor made deposits, payments, and transfers to and for the benefit of the

Defendants, totaling two hundred forty-five thousand nine hundred forty two dollars and

fifty-two cents ($245,942.52) (the "Transfers"), including:

a.  Online payment in the amount of two hundred dollars ($200.00) from the Debtor's

Wachovia account ending in 4710 to Mrs. Ryan on July 20, 2007 (Compl. ¶ 28(i).);

b.  Check No. 5135 from the Debtor's Wachovia account number ending in 4710, dated

August 30, 2007, made payable to Mrs. Ryan, in the amount of one hundred dollars

($100.00) (Compl. ¶ 28(ii).);

c.  Check No. 5144 from the Debtor's Wachovia account number ending in 4710, dated

September 7, 2007, made payable to Mrs. Ryan, in the amount of eleven thousand

five hundred dollars ($11,500.00) (Compl. ¶ 28(iii).);

d.  Check No. 5011 from the Debtor's TowneBank account ending in 7048, dated

November 15, 2007, made payable to Mrs. Ryan, in the amount of fourteen thousand

two hundred fifty dollars ($14,250.00) (Compl. ¶ 28(iv).);

e.  Check No. 5005 from the Debtor's Wachovia account number ending in 4710, dated

November 15, 2007, in the amount of four hundred ninety-three dollars and eight

cents ($493.08) held by the Debtor (Compl. ¶ 28(v).);

f.  Retirement, disability and social security payments of the Debtor, being directly

deposited into Mrs. Ryan's Bank of America account ending in 1648, in amounts of

three hundred seventy-six dollars and seventy-two cents ($376.72), one thousand four

hundred forty-three dollars and seventy-three cents ($1,443.73), and five hundred

9

seventy dollars and twenty cents ($570.20) on September 21, 2007, September 28, 2007, and November 21, 2007 respectively (Compl. ¶ 28(vi).);

g.  Debtor's funds, in the amount of one hundred two thousand ninety-five dollars ($102,095.00), being deposited into Mrs. Ryan's Bank of America account ending in 1648, between August 24 2007, through October 1, 2007 (Compl. ¶ 28(vii).);

h.  Debtor's funds, in the amount of five thousand fifty dollars ($5,050.00), being deposited into Mr. and Mrs. Ryan's Bank of America account ending in 9305 (Compl. ¶ 28(viii).); and

i.  Debtor's funds, in the amount of thirty-two thousand fifty dollars ($32,050.00), being deposited into Mrs. Ryan's Wachovia Account ending in 7168, between the period of September 10, 2007 through September 27, 2007 (Compl. ¶ 28(ix).).

The Complaint further avers that the Transfers were made during the two (2) year period immediately preceding the filing of the Petition and involved property of the Debtor. (Compl. ¶ 32, 33.) At all such times, the Family Trust was a creditor of the Debtor. (Compl. ¶ 33.)

Additionally, the Complaint alleges that "the Debtor continued . . . his efforts, to divert, transfer, and conceal assets from the Trustee after the Petition Date" (the "Additional Transfers"). (Compl. ¶ 18.) Such Additional Transfers "aris[e] out of the same and similar transactions, techniques, scheme, course of conduct, occurrences and efforts" as the Transfers and involve property of the estate. (Compl. ¶ 34.) Both the Transfers and the Additional Transfers were made to and for the benefit of the Defendants. (Compl. ¶ 35.) Finally, the Complaint avers that the Debtor was insolvent as of August 13, 2007—the date of the State Court Judgment—and remained insolvent at all such times that the Transfers and Additional Transfers were made. (Compl. ¶ 36.)

10

### C. The Default Motion Hearing

On October 4, 2011, the Court convened the Default Motion Hearing. (Doc. No. 97.)
The Defendants did not appear in person or by telephone, and no one appeared on their behalf.
(Hr'g Tr. 3:13-23.) The Plaintiff was the only witness who testified at the Default Motion
Hearing, and his testimony was admitted without objection. (Hr'g Tr. 12:9-18:17.) All of the
documents introduced by the Plaintiff as exhibits were admitted without objection (the
"Exhibits"). The Exhibits admitted into evidence include:

  i. Response of Wells Fargo to the Plaintiff's subpoena *duces tecum*, providing a declaration
     of Wells Fargo's custodian of records pursuant to 28 U.S.C. § 1746, Rules 902(11) and
     803(c) of the Federal Rules of Evidence; cancelled checks drawn from the Debtor's
     Wachovia account ending in 4710; and bank statements for Mrs. Ryan's Wachovia
     account ending in 7618 (Hr'g Tr. 11:13-19, Ex. 1.);

  ii. Response of Bank of America to the Plaintiff's subpoena *duces tecum*, providing a
     declaration of Bank of America's custodian of records pursuant to 28 U.S.C. § 1746,
     Rules 902(11) and 803(c) of the Federal Rules of Evidence; bank statements for Mrs.
     Ryan's Bank of America account ending in 1648; and bank statements for Mr. and Mrs.
     Ryan's Bank of America account ending in 9305 (Hr'g Tr. 11:13-19, Ex. 2.);

  iii. Bank Statements for Mrs. Ryan's Wells Fargo account ending in 7928 for the period of
     November 9, 2007, through November 27, 2007, including a transaction record for
     deposits made on November 9, 2007, and November 13, 2007 (Hr'g Tr. 15:8-12, Ex. 5.);

  iv. Bank statements for the Debtors Wells Fargo account ending in 9207 for the period of
     September 4, 2007, through November 23, 2007 (Hr'g Tr. 18:7-11, Ex. 6.);

  v. Response of U.S. Bank, N.A. ("U.S. Bank"), formerly known as San Diego National
     Bank, to the Plaintiff's subpoena *duces tecum*, providing declaration U.S. Bank's

11

custodian of records pursuant to 28 U.S.C. § 1746, Rules 902(11) and 803(c) of the

Federal Rules of Evidence; a copy of the signature card for U.S. Bank account ending in

5422, evidencing ownership by Mrs. Ryan of the same and power of attorney rights in the

Debtor; and bank statements for Mrs. Ryan's U.S. Bank account ending in 5422 for the

period of January 11, 2008, through January 13, 2009 (Hr'g Tr. 11:13-19, Ex. 7.); and

vi. Response of TowneBank to the Plaintiff's subpoena *duces tecum*, providing a declaration

of TowneBank's custodian of records pursuant to 28 U.S.C. § 1746, Rules 902(11) and

803(c) of the Federal Rules of Evidence; a transaction ticket for the Debtor's TowneBank

account ending in 7048, dated November 8, 2007, evidencing the closing of said account;

and a receipt evidencing an online payment from the TowneBank account ending in 7048

made payable to Mrs. Ryan by the Debtor. (Hr'g Tr. 11:13-19, Ex. 8.)

Given the breadth of documents identified as Exhibits, the Court permitted the introduction of a

summary pursuant to Rule 1006 of the Federal Rules of Evidence (the "Evidence Summary").

*See* Fed. R. Bankr. P. 9017.

At the conclusion of the Default Judgment Hearing, based on amounts represented by the

Plaintiff through the Evidence Summary, the Court determined it would enter a joint and several

judgment against the Defendants in the amount of thirty-eight thousand two hundred sixty-nine

dollars and eighty cents ($38,269.80); the Court also determined it would enter a judgment

against Mrs. Ryan alone in the amount of three hundred fourteen thousand two hundred fifty-

four dollars and fifty-one cents ($314,254.51) (collectively the "Judgments"). (Hr'g Tr. 50:1-7.)

The Court advised the Plaintiff, however, that the Judgments were subject to subsequent

adjustment based on the Court's independent calculation. Accordingly, the Court instructed the

Plaintiff to file a post-hearing brief that included an amended Evidence Summary clearly linking

the Transfers and Additional Transfers to the Exhibits admitted at the Default Judgment Hearing.

(Hr'g Tr. 49:12-50:13.)

On October 26, 2011, the Plaintiff filed a post-hearing brief and amended Evidence

Summary (the "Post-Hearing Brief"). (Doc. No. 102.) The Court has reviewed the Post-Hearing

Brief and, based on its independent calculation, finds, as a finding of fact and conclusion of law,

that the Judgments should be adjusted as follows: (i) that a joint and several judgment against the

Defendants should be entered in the amount of thirty-four thousand ninety-three dollars and eight

cents ($34,093.08); and (ii) that a judgment against Mrs. Ryan alone should be entered in the

amount of three hundred eighteen thousand four hundred thirty-one dollars and twenty-three

cents ($318,431.23). Appendix A, attached to this opinion, summarizes the Court's independent

calculation.

### III. CONCLUSIONS OF LAW

#### A. The Statutory Framework

**1. Default Judgment Standard.**

Federal Rule of Bankruptcy Procedure 7055 incorporates into adversary proceedings

Rule 55 of the Federal Rules of Civil Procedure.[6] Upon a showing that a party against whom

judgment is sought has failed to plead or otherwise defend, the Court may grant a motion for

default judgment. Although the Fourth Circuit has a "strong policy that cases be decided on the

merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th. Cir. 1993), "default judgment

is available 'when the adversary process has been halted because of an essentially unresponsive

---

[6] "Rule 55[] applies in adversary proceedings." Fed. R. Bankr. P. 7055. Rule 55(b)(2) states:

> (2) By the Court. In all other cases, the party must apply to the court for a default judgment . . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing . . . .

Fed. R. Civ. P. 55(b)(2).

13

party.'" *State Emps.' Credit Union v. Nat'l Auto Leasing, Inc.*, CA No. 2:06cv663, 2007 WL

1459301, at *1 (E.D. Va. May 14, 2007) (citing *SEC v. Lambaugh*, 359 F. Supp. 2d 418, 421 (D.

Md. 2005)).

　　While the Court is vested with the discretion to enter default judgment, the Fourth Circuit

requires that the Court evaluate the validity of the plaintiff's underlying claims. *See Gray v.*

*Bank of Am., N.A. (In re Gray)* Case No. 09-14445, 2010 Bankr. Lexis 181, at *11 (Bankr. E.D.

Va. Jan. 15, 2010) (citations omitted). The United States Court of Appeals for the Fourth Circuit

set out the standard for granting a default judgment in *DIRECTV, Inc. v. Rawlins*, 523 F.3d 318

(4th Cir. 2008). *See In re Nguyen*, No. 09-13057-RGM, 2010 WL 56075, at *1 (Bankr. E.D. Va.

Jan. 6, 2010) (citation omitted). Upon default, the well-pleaded factual allegations of the

complaint regarding liability are deemed admitted against the defendant. *See DIRECTV, Inc.*,

523 F.3d at 322 n.2 (citation omitted). On the other hand, the party in default "is not held . . . to

admit conclusions of law or allegations regarding liability that are not well-pleaded." *Ryan*, 253

F.3d at 780.

　　In the instant case, the Court finds that the Defendants, having failed to file a responsive

pleading, are unresponsive parties within the purview of Rule 55 of the Federal Rules of Civil

Procedure. Federal Rule of Bankruptcy Procedure 7012(a) states that "[i]f a complaint is duly

served, the defendant shall serve an answer within 30 days after the issuance of the summons,

except when a different time is prescribed by the court." Fed. R. Bankr. P. 7012(a). In the case

at bar, the Defendants were served via first class mail, postage prepaid, with a copy of the

Summons and Complaint on July 28, 2010. (Doc. No. 4.) *See* Fed. R. Bankr. P. 7004(b)(1). In

the instant case, the Defendants were obligated to file an answer or other responsive pleading no

later than August 20, 2010. (Doc. No. 3.)

　　The Defendants timely filed the First Motion to Dismiss on August 18, 2010. (Doc. No.

14

5.) However, the Court dismissed the First Motion to Dismiss on November 22, 2010, for failure to prosecute. (Doc. No. 27.) Thereafter, neither Defendant filed any other responsive pleading or motion pursuant to Federal Rule of Bankruptcy Procedure 7012. Accordingly, the Court finds, as a finding of fact and conclusion of law, that the Defendants, having failed to timely file and prosecute a responsive pleading, are in default.

Nevertheless, that a defendant fails to respond to a plaintiff's complaint is not sufficient to constitute an admission on all of the Plaintiff's claims. *See Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (internal quotation marks omitted) (citations omitted). "The Court must . . . determine whether the well-pleaded allegations [contained in the] complaint support the relief sought." *Id.* (citations omitted).

## 2. 11 U.S.C. §§ 548 & 550.

The Complaint seeks to avoid, pursuant to 11 U.S.C. § 548(a), the Transfers and the Additional Transfers made by the Debtor to the Defendants.[7] (Compl. ¶¶ 42-44.) Additionally, the Plaintiff requests an order pursuant to 11 U.S.C. § 550(a) for the value of property of the Debtor and property of the estate that was subject of the Transfers and Additional Transfers. (Compl. ¶¶ 69-74.)

---

[7] The Complaint asserts eight (8) counts against the Defendants: (I) avoidance of fraudulent transfers pursuant to 11 U.S.C. § 548(a); (II) avoidance of preferential transfers pursuant to 11 U.S.C. § 547(b); (III) avoidance of post-petition transfers pursuant to 11 U.S.C. § 549; (IV) avoidance of fraudulent conveyances pursuant to VA. CODE § 55-80 and 11 U.S.C. § 544; (V) avoidance of voluntary conveyances pursuant to VA. CODE § 55-81 and 11 U.S.C. § 544; (VI) avoidance of fraudulent transfers pursuant to CA. CIV. CODE § 349.04 and 11 U.S.C. § 544; (VII) turnover pursuant to 11 U.S.C. § 542; and (VIII) recovery pursuant to 11 U.S.C. § 550(a). (Compl. ¶¶ 42-78.) At the Default Judgment Hearing, the Plaintiff indicated that he was proceeding pursuant to 11 U.S.C. §§ 548(a) and 550(a) only. (Hr'g Tr. 38:23-42:17.) The Post-Hearing Brief abandons Counts II through VI. (Doc. No. 102, at 20.). Accordingly, the Court concludes that the instant case arises under Title 11 of the United States Code. *See In re Freeway Foods of Greensboro, Inc.*, No. 10-11282, 2012 Bankr. Lexis 2012, at *37, fn.15 (Bankr. M.D.N.C. Jan. 13, 2012) ("Cases 'arise under' Title 11 when the cause of action or substantive right claimed is created by the Bankruptcy Code."). Since the instant action does not exist absent the bankruptcy filing—*i.e.*, an avoidance action under 11 U.S.C. § 548 exists only when a case under Title 11 of the United States Code is pending—the ruling in *Stern v. Marshall*, 131 S. Ct. 2594 (2011) is not at issue.

"Section 548 of the Bankruptcy Code exists 'to preserve the debtor's estate for the

benefit of its unsecured creditors.'" *In re Bay Vista of Va., Inc.*, 428 B.R. 197, 220 (Bankr. E.D.

Va. 2010) (internal quotation marks omitted) (quoting *Banks Auto Parts, Inc. v. Banks Invs. I LC*

*(In re Banks Auto Parts, Inc.)*, 385 B.R. 142, 153 (Bankr. E.D. Va. 2008)).  Judge Thomas J.

Catliota of the United States Bankruptcy Court for the District of Maryland recently examined

Section 548(a):

> Under Section 548(a)(1)(B)(i), a transfer can only be avoided if the debtor
> "received less than reasonably equivalent value for such transfer . . ." For
> purposes of Section 548, ". . . value means property, or satisfaction or securing of
> a present or antecedent debt of the debtor . . . 11 U.S.C. § 548(d)(2)(A).
> "[R]easonably equivalent value looks to the consideration actually received by the
> debtor, not to the value given by the transferee." *Koch v. Rogers (In re Broumas)*,
> 203 B.R. 385, 393 (D. Md. 1996) (citing *Harman v. Am. Bank of Md. (In re
> Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 484 (4th Cir. 1992).

*Whitney v. Newman (In re Whitney)*, Adv. No. 06-1597, 2007 WL 2230063, at *5 (Bankr. D.

Md. July 30, 2007).  Section 548 of the Bankruptcy Code provides, in pertinent part:

> (a)(1) The Trustee may avoid any transfer (including any transfer to or for the
> benefit of an insider under an employment contract) of an interest of the debtor in
> property, or any obligation (including any obligation to or for the benefit of an
> insider under an employment contract) incurred by the debtor, that was made or
> incurred on or within 2 years before the date of the filing of the petition, if the
> debtor voluntarily or involuntarily—
>
> . . .
>
> > (B)(i) received less than a reasonably equivalent value in exchange for
> > such transfer or obligation; and
> >
> > (ii)(I) was insolvent on the date that such transfer was made or such
> > obligation was incurred, or became insolvent as a result of such transfer or
> > obligation;
> >
> > > (II) was engaged in business or a transaction or was about to engage in
> > > business or a transaction, for which any property remaining with the
> > > debtor was an unreasonably small capital;
> > >
> > > (III) intended to incur, or believed that the debtor would incur, debts
> > > that would be beyond the debtor's ability to pay as such debts; or
> > >
> > > (IV) made such transfer to or for the benefit of an insider, or incurred

such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B). "'The burden of proof of establishing the existence of elements of a voidable transfer under [S]ection 548 of the Bankruptcy Code rests on the trustee. This burden of proof never shifts." *Hovis v. Ducate (In re Ducate)*, 369 B.R. 251, 262 (Bankr. D.S.C. 2007) (quoting 5-548 COLLIER ON BANKRUPTCY ¶ 548.10 (15th ed. rev.)). "The Trustee must prove elements of [S]ection 548 by a preponderance of evidence." *In re Bay Vista of Va., Inc.*, 428 B.R. at 221 (citing *Ivey v. Crown Mem'l Park, LLC (In re Lee Memory Gardens, Inc.)*, Adv. No. 04-9025, 2006 WL 996567, at *2 (Bankr. E.D.N.C. Apr. 14, 2006)).

In conjunction with Section 548, Section 550 of the Bankruptcy Code sets forth from whom such a transfer may be recovered:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> > (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> >
> > (2) any immediate or mediate transferee of such initial transferee.
>
> (b) The trustee may not recover under section (a)(2) of this section from—
>
> > (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> >
> > (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(a)-(b). Therefore, "[u]nder 11 U.S.C. § 548(a)(1)(B), a transfer by Debtor of any interest in property may be avoided if two elements are satisfied. First, Debtor must have 'received less than a reasonable equivalent value for such transfer . . . . Second, the transfer must either have been made while Debtor was insolvent or have itself rendered Debtor insolvent." *Anderson & Assocs. v. S. Textile Knitters De Honduras Sewing Inc. (In re S. Textile Knitters)*, 65

17

Fed. Appx. 426, 436 (4th Cir. 2003) (citing 11 U.S.C. § 548(a)(1)(B)).

## B. Analysis

### 1. Plaintiff's § 548 Claim is Meritorious.

The Court finds, as a finding of fact and conclusion of law, that the allegations contained

in the Complaint are well-pleaded and support avoidance of the Transfers and Additional

Transfers pursuant to Section 548(a)(1)(B). *See Ryan*, 253 F.2d at 780.  The well-pleaded

complaint rule requires that complaints be supported by factual allegations, rather than

generalities, supporting a proper basis for federal subject-matter jurisdiction. *See Nansemond

Wharf-Suffolk Props., LLC v. Bank of Southside Va.*, 780 F. Supp. 2d 453, 457 (E.D. Va. 2011)

(citing *Catepillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)).  "[A] plaintiff must provide

grounds for entitlement to relief, which requires more than labels and conclusions or a formulaic

recitation of the entitlements of a cause of action, and the well-pleaded factual allegations must

'plausibly' support an entitlement to relief." *Sayal v. Faruque* (*In re Farque*), Adv. No. 09-

1035, 2009 WL 2211210, at *3 (Bankr. E.D. Va. July 20, 2009) (citing *Ashcroft v. Iqbal*, 556

U.S. 662 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)).  Applying this rubric to the

instant case, the Court finds that the Complaint sets forth more than a mere recitation of the

elements comprising a cause of action pursuant to 11 U.S.C. §548, and plausibly supports

entitlement to the relief sought. *See id.*

### A.    The Transfers and Additional Transfers Involved Interests of the Debtor in Property.

The unchallenged factual allegations establish that the Debtor transferred thirty-four

thousand ninety-three dollars and eight cents ($34,093.08) to the Defendants, and three hundred

eighteen thousand four hundred thirty-one dollars and twenty-three cents ($318,431.23) to Mrs.

Ryan, individually, during the two (2) year period immediately preceding the filing of the

Petition. *See* Appendix A.  Taken as true, the allegations plausibly establish that the Debtor—

having power of attorney rights over, if not full ownership interests in, the various funds subject

of the Transfers and Additional Transfers—had an "interest in property" within the meaning of

Section 548(a)(1).

### B.    The Debtor Received Less than Reasonably Equivalent Value in Exchange for the Transfers and Additional Transfers.

Additionally, the Court finds, as a finding of fact and conclusion of law, that the Debtor

"received less than a reasonably equivalent value in exchange for such" Transfers and Additional

Transfers.  11 U.S.C. § 548(a)(1)(B)(i).  "For the purposes of [S]ection 548, . . . 'value means

property, or satisfaction or securing of a present or antecedent debt of the debtor.  [R]easonably

equivalent value looks to the consideration actually received by the debtor, not to the value given

by the transferee." *Whitney*, 2007 WL 2230063, at *5 (citations omitted).  In the instant case, the

uncontested factual allegations, supported by the Exhibits and the Plaintiff's unchallenged

testimony, establish that Debtor received no consideration in exchange for hundreds of thousands

of dollars ceded to the Defendants via the Transfers and Additional Transfers.  (Hr'g Tr. 12:4-

18:17.)

### C.    The Debtor Was Insolvent at the Time of the Transfers and Additional Transfers.

The Court also finds, as a finding of fact and conclusion of law, that the Debtor was

insolvent at the time of the Transfers and Additional Transfers.  *See* 11 U.S.C.

548(a)(1)(B)(ii)(I).  "Courts generally rely upon the Bankruptcy Code's definition of insolvency

for the purposes of [S]ection 548(a)(1)(B)." *In re Bay Vista of Va.*, 428 B.R. at 225 (citing *In re

Porter*, 37 B.R. 56, 61 (Bankr. E.D. Va. 1984)).  Section 101(32) of the Bankruptcy Code

provides that, for an individual, insolvent means:

> [A] financial condition such that the sum of such entity's debts is greater than all
> of such entity's property, at fair valuation, exclusive of—

(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title.

11 U.S.C. § 101(32). Courts within the Fourth Circuit apply a "balance sheet test" in determining insolvency for the purposes of Section 548(a)(1)(B). *See Whitaker v. Mortgage Miracles, Inc. (In re Summit Place, LLC)*, 298 B.R. 62, 74 (Bankr. W.D.N.C. 2002) (citations omitted) ("Insolvency is determined by a balance sheet test . . . [a] debtor is insolvent when the sum of the debts is greater than the sum of the assets."). "The balance sheet test for insolvency determines whether the debtor was insolvent when the transfer was made; [it] involves the comparing of the fair market value of the debtor's assets at the time of the transaction with the debtor's liabilities on the same date." *Matson v. Strickland (In re Strickland)*, 230 B.R. 276, 281 (Bankr. E.D. Va. 1999) (citations omitted).

With respect to the element of insolvency, the only evidence offered by the Plaintiff was the schedules filed by the Debtor in the underlying main bankruptcy case (the "Schedules"), which the Plaintiff requested that the Court take judicial notice of at the Hearing. (Hr'g Tr. 45:12-16.) Essentially, the Plaintiff's position is that the Court should infer insolvency at the time of the Transfers and Additional Transfers on the basis of (a.) the uncontested allegation that the Debtor was insolvent as of August 13, 2007—the date of the State Court Judgment—and (b.) a review of the Schedules, which purport to establish insolvency as of July 16, 2008, the date of the filing of the Petition. (Compl. ¶ 36.)

Rule 201(c) of the Federal Rules of Evidence, as incorporated by and made applicable to adversary proceedings by Rule 9017 of the Federal Rules of Bankruptcy Procedure, empowers bankruptcy courts with authority to take judicial notice. Fed. R. Evid. 201(c). Indeed, "[i]t is well established that the Court is duty bound to take judicial notice of its own records, . . . [and]

20

may exercise its discretion to take judicial notice of the [debtor's] schedules in an adversary

proceeding arising from the same bankruptcy case." *In re Strickland*, 230 B.R. at 282-83. Case

law within the Fourth Circuit is unsettled, however, as to whether judicial notice of a debtor's

schedules, standing in isolation, is sufficient to establish insolvency under Section 548(a)(1)(B).

*See id.* at 283 (concluding that reference to a debtor's bankruptcy schedules alone is insufficient

to establish insolvency for the purposes of a preference action under Section 547). Nevertheless,

as previously articulated by Judge Shelley N. Blackwell of the United States Bankruptcy Court

for the Eastern District of Virginia, "[s]everal Courts have applied the 'retrojection rule,' which

provides as follows: if a debtor was insolvent on the first known date and insolvent on the last

relevant date, and the trustee demonstrates the absence of any substantial or radical changes in

the assets or liabilities of the debtor between the two retrojection dates, then the debtor is deemed

to be insolvent at all intermediate times." *Id.* (citing *In re Terrific Seafoods, Inc.*, 197 B.R. 724,

731 (Bankr. D.Mass. 1996); *In re Thomas*, 7 B.R. 389, 393 (B.R. W.D. Va. 1980)).

      Applying the retrojection rule to the uncontested factual record of the instant case, the

Court finds that the Plaintiff has carried his burden of establishing that the Debtor was insolvent

at the time the Transfers and Additional Transfers were made. The balance sheet test establishes

that the Debtor was insolvent at the time the Petition was filed, on July 16, 2008. *In re Summit*

*Place, LLC*, 298 B.R. at 74. The Schedules indicate that the Debtor had assets of seven hundred

fifty-two thousand nine hundred forty-five dollars ($752,945.00), and liabilities of one million

three hundred thirty-five thousand three hundred forty-eight dollars ($1,335,348.00) as of the

date of the Petition. (Case No. 08-50805-FJS, Doc No. 42, at 1.) Significantly, Schedule D

indicates that the Family Trust was the Debtor's largest secured creditor, holding three (3)

separate judgment liens on the Debtor's real property residence exceeding a total of one million

dollars ($1,000,000.00). (Case No. 08-50805-FJS, Doc No. 42, at 12.) In light of the foregoing

unchallenged evidentiary record, the Court concludes that the Debtor was rendered insolvent by the State Court Judgment—entered on August 13, 2007, and subsequently augmented on April 7, 2008—and remained insolvent at all subsequent times when the Transfers and Additional Transfers were made.

**2. Plaintiff is Entitled to Recovery Pursuant to § 550.**

Having concluded that the Plaintiff is entitled to avoidance of the Transfers and Additional Transfers pursuant to Section 548, the Court must now determine the amount of recovery pursuant to Section 550. "Section 550 of the Bankruptcy Code allows the Trustee, once he has avoided the transfers of [property], to recover either the [property] or their value from the initial transferee or from the person for whose benefit the transfer was made." *In re Paschall*, 403 B.R. 366, 378 (Bankr. E.D. Va. 2009) (citing 11 U.S.C. § 550(a)(1).) "In order to constitute an 'initial transferee' of property under [S]ection 550(a), a person or entity must have exercised legal dominion and control over the property." *In re Derivium Capital, LLC*, 396 B.R. 184, 193 (Bankr. D.S.C. 2008) (citing *Bowers v. Atlanta Motor Speedway, Inc.* (*In re Southeast Hotel Props.*), 99 F.3d 151, 156 (4th Cir. 1996)). "A recipient of an avoidable transfer must exercise legal control over the asset received and not merely serve as a conduit for the assets that were under the actual control of the debtor-transferor or the real initial transferee." *Id.* (citing *In re Pony Express Deliv. Servs.*, 440 F.3d 1296, 1300 (11th Cir. 2006); *Rupp v. Markgraf*, 95 F.3d 936, 941 (10th Cir. 1996)).

The uncontested factual allegations reflect that the Transfers and Additional Transfers were made to the Defendants themselves and into various bank and investment accounts maintained in the names of the Defendants. *See* Appendix A. The Court concludes, as a finding of fact and conclusion of law, that the receipt of such funds, and that the maintenance of such accounts into which the Traditional and Additional Transfers were made, constitutes "legal

22

dominion and control over property" as contemplated by Section 550(a). *See In re Derivium Capital, LLC*, 396 B.R. at 193. Accordingly, the Court finds that the Plaintiff is entitled to an order providing for recovery against John J. Ryan, Jr. and Helen E. Ryan, jointly and severally, in the amount of thirty-four thousand ninety-three dollars and eight cents ($34,093.08), and against Helen E. Ryan only, in the amount of three hundred eighteen thousand four hundred thirty-one dollars and twenty-three cents ($318,431.23). *See* Appendix A.

## IV. CONCLUSION

For the reasons stated above, the Court finds as a finding of fact and conclusion of law that the Defendants are in default and, therefore, that the Plaintiff is entitled to avoidance of the Transfers and Additional Transfer pursuant to 11 U.S.C. § 548(a)(1)(B). *See Ryan*, 253 F.2d at 780. The Court further finds that the Plaintiff is entitled to an order, pursuant to 11 U.S.C. § 550(a), providing for recovery against John J. Ryan, Jr. and Helen E. Ryan, jointly and severally, in the amount of thirty-four thousand ninety-three dollars and eight cents ($34,093.08), and against Helen E. Ryan only, in the amount of three hundred eighteen thousand four hundred thirty-one dollars and twenty-three cents ($318,431.23).

A separate Order will issue.

Upon entry of this Memorandum Opinion, the Clerk shall serve via first class United States Mail, postage prepaid, a copy of this Memorandum Opinion to: the United States Trustee, Room 625, 200 Granby Street, Norfolk, Virginia, 23510; David R. Ruby, Esq., Chapter 7 Trustee, Thompson McMullan, P.C., 100 Shockoe Slip, Richmond, Virginia, 23219; Kelly M. Barnhart, Esq., Roussos, Lassiter Glanzer & Barnhart, P.L.C., 580 East Main Street, Suite 300, P.O. Box 3127, Norfolk, Virginia, 23514; and to John J. Ryan, Jr., Helen E. Ryan, and Mykal S. Ryan, individually and separately, at 5253 Canning Place, San Diego, CA 92111-3805, both by first class United States Mail, postage prepaid, and by Federal Express next day delivery.

DATED:

4-4-2012

FRANK J. SANTORO
United States Bankruptcy Judge

NOTICE OF JUDGMENT OR ORDER
Entered on docket     APR 4 2012

24

## APPENDIX A

**EXHIBIT 1**

| Date | Amount | Source | Destination | Mrs. Ryan | Mr. & Mrs. Ryan |
|------|--------|--------|-------------|-----------|-----------------|
| 09/07/07 | $11,500.00 | Acct. ending 4710 | Acct. ending 9305 | - | $11,500.00 |
| 09/19/07 | $5,050.00 | Acct. ending 1648 | Acct. ending 9305 | - | $5,050.00 |
| 09/25/07 | $9,000.00 | Postal Order | Acct. ending 7168 | $9,000.00 | - |
| 09/26/07 | $9,000.00 | Postal Order | Acct. ending 7168 | $9,000.00 | - |
| 09/27/07 | $9,000.00 | Postal Order | Acct. ending 7168 | $9,000.00 | - |
| 10/02/07 | $16,000.00 | JP Morgan Acct. - Helen Ryan, ITF, Mykal S. Ryan | Acct. ending 7168 | $16,000.00 | - |
| 10/02/07 | $66,793.34 | Check Deposit – Mykal S. Ryan to Mykal Ryan, Endorsed "Deposit Only" | Acct. ending 7168 | $66,793.34 | - |
| | | | **SUBTOTAL:** | **$109,793.34** | **$16,550.00** |

**EXHIBIT 2**

| Date | Amount | Source | Destination | Mrs. Ryan | Mr. & Mrs. Ryan |
|------|--------|--------|-------------|-----------|-----------------|
| 09/19/07 | $300.00 | Acct. ending 1648 | Mrs. Ryan ING | $300.00 | - |
| 09/21/07 | $376.72 | DFAS Dir. Deposit | Acct. ending 1648 | $376.72 | - |
| 09/21/07 | $50,000.00 | Acct. ending 1648 | Mrs. Ryan ING | $50,000.00 | - |
| 09/25/07 | $1,000.00 | Acct. ending 1648 | Mrs. Ryan ING | $1,000.00 | - |
| 09/28/07 | $1,443.76 | DOD Travel Pay | Acct. ending 1648 | $1,443.76 | - |
| 10/02/07 | $20,000.00 | Acct. ending 1648 | Mrs. Ryan ING | $20,000.00 | - |
| 10/10/07 | $10,000.00 | Acct. ending 1648 | Mrs. Ryan ING | $10,000.00 | - |
| 10/21/07 | $570.20 | DFAS Dir. Deposit | Acct. ending 1648 | $570.20 | - |
| 10/26/07 | $1,800.00 | Acct. ending 1648 | Acct. ending 9305 | $1,800.00 | - |
| 11/15/07 | $14,250.00 | Acct. ending 7048 | Acct. ending 9305 | - | $14,250.00 |
| 11/21/07 | $1,800.00 | Mykal Ryan NN Checking Acct. | Acct. ending 9305 | - | $1,800.00 |
| 01/09/08 | $1,846.00 | SSA Disability | Acct. ending 1648 | $1,846.00 | - |
| 01/11/08 | $688.25 | DOD Travel Pay | Acct. ending 1648 | $688.25 | - |
| 01/15/08 | $98.96 | DFAS Dir. Deposit | Acct. ending 1648 | $98.96 | - |
| 01/29/08 | $4,993.28 | Acct. ending 1648 | Cash Withdrawal | $4,993.28 | - |
| 11/19/08 | $1,493.08 | Mykal Ryan NN Checking Acct. | Acct. ending 9305 | - | $1,493.08 |
| 12/06/11 | $2,652.68 | DOD Travel Pay | Acct. ending 1648 | $2,652.68 | - |
| 12/26/08 – 01/24/08 | $11,871.40 | Acct. ending 1648 | Various Withdrawals and Transfers | $11,871.40 | - |
| | | | **SUBTOTAL:** | **$107,641.25** | **$17,543.08** |

25

**EXHIBITS 5 & 6**

| Date | Amount | Source | Destination | Mrs. Ryan | Mr. & Mrs. Ryan |
|------|--------|--------|-------------|-----------|------------------|
| 11/09/07 | $75,546.71 | Acct. ending 9207 | Acct. ending 7928 | $75,546.71 | - |
| | | | SUBTOTAL: | $75,546.71 | $0.00 |

**EXHIBIT 7**

| Date | Amount | Source | Destination | Mrs. Ryan | Mr. & Mrs. Ryan |
|------|--------|--------|-------------|-----------|------------------|
| 02/06/08 | $159.35 | DFAS Dir. Deposit | Acct. ending 5422 | $159.35 | - |
| 02/13/08 | $1,846.00 | SSA Disability | Acct. ending 5422 | $1,846.00 | - |
| 03/12/08 | $1,846.00 | SSA Disability | Acct. ending 5422 | $1,846.00 | - |
| 03/27/08 | $819.37 | DFAS Dir. Deposit | Acct. ending 5422 | $819.37 | - |
| 04/09/08 | $1,846.00 | DFAS Dir. Deposit | Acct. ending 5422 | $1,846.00 | - |
| 05/14/08 | $1,850.00 | SSA Disability | Acct. ending 5422 | $1,850.00 | - |
| 06/11/08 | $1,847.00 | SSA Disability | Acct. ending 5422 | $1,847.00 | - |
| 07/09/08 | $1,847.00 | SSA Disability | Acct. ending 5422 | $1,847.00 | - |
| 08/13/08 | $1,847.00 | SSA Disability | Acct. ending 5422 | $1,847.00 | - |
| 08/15/08 | $837.00 | VA Dept. Taxation | Acct. ending 5422 | $837.00 | - |
| 08/22/08 | $2,929.21 | IRS Dir. Deposit | Acct. ending 5422 | $2,929.21 | - |
| 08/29/08 | $300.00 | IRS Dir. Deposit | Acct. ending 5422 | $300.00 | - |
| 09/10/08 | $1,847.00 | SSA Disability | Acct. ending 5422 | $1,847.00 | - |
| 10/08/08 | $1,847.00 | SSA Disability | Acct. ending 5422 | $1,847.00 | - |
| 11/12/08 | $1,847.00 | SSA Disability | Acct. ending 5422 | $1,847.00 | - |
| 12/10/08 | $1,935.00 | SSA Disability | Acct. ending 5422 | $1,935.00 | - |
| | | | SUBTOTAL: | $25,449.93 | $0.00 |
| | | | TOTAL: | $318,431.23 | $34,093.08 |